**TELESIA TIUMALU SCANLAN, Claimant**

v.

**PALAUNI TUIASOSOPO, Objector**

## No. 1408-1974

## High Court of American Samoa

### Civil Jurisdiction, Land and Titles Division

[Matai Title: "Tiumalu" of Fagatogo]

## August 19, 1975

---

The record of this matter begins after this manner upon due consideration of the Court regarding the motion introduced by the Afioga Salanoa S. Aumoeualogo.

After the Tōfā Mageo Meauta testified, especially those who testified on the witness stand for Telesia Tiumalu Scanlan's side, then the time was turned over to the Afioga

Salanoa Aumoeualogo as counsel for his side for some who shall testify for Palauni Tuiasosopo.

At the very beginning, and before the Afioga Salanoa speaks for his side, the motion was first duly introduced after the following wording: "Public Law 10–16, 1968 § (1) 751, Qualifications for succession to title; Provided, that any person not possessing at least one-half ($\frac{1}{2}$) or fifty percent (50%) Samoan blood shall be ineligible to succeed any matai title."

Accordingly, the Afioga Salanoa classified and outlined Telesia's blood in support of his motion to the Court, and stated that Telesia has Tongan blood amounting to about $6^{1}/4$, deriving from her being the offspring of her mother, Tiumalu Taimane, who is presently holding the title Tiumalu; he (Salanoa) further stated that Telesia, too, possesses Filipino blood through her father, and the said blood amounts to approximately fifty (50%) percent. Summing up both the Tongan and the Filipino blood re: Telesia and it total up to $56^{1}/4$. In other words, Telesia has but only $43^{3}/4$ Samoan blood flowing in her veins (body). On the other hand, this means that there is $6^{1}/4$ more to make up 50% re Telesia's Samoan blood in order she may be qualified for succession to a Matai Samoa according to the motion as entertained by the Afioga Salanoa.

Accordingly, the motion was well taken by the Court, however, the said motion was denied by the Court on its discretion and serious consideration, as well, and to resume the trial in order to discover evidence to determine whether the motion is in order or not, before divulging some evidences that were presented before the Court by those witnesses who testified; but the Court would like to, first, disclose its reasons for denying the motion.

The law has its required considerations whereby properties are to be segregated in that the law is to interpret clearly the intent of the law; for it is not that as soon as

the law pronounces the guilt of a person, such as "Pai or Lāfai", "Tui or Seve," then die instantly, before investigating and considering of the cause of the trouble. Consideration of whether said person should be punished or not, according to law.

Upon the following motion: There is no difference of the herein law from the Law in the Code of American Samoa; Section VI, Code of American Samoa 1961, Ed. 6.0110, P.L. 10–61, 1968 whereupon it states that "If it be for one calendar year that a Matai Samoa has not continuously residing in American Samoa, but is residing in some far off countries like America, Hawaii, or in any country which located outside of Samoa." It means that such is under the consideration of the law, thereupon the family has the right to remove said person from his status as a matai in accordance to the law.

See the evidence in the case of *Saga T. Vaivao*, in the village of Leloaloa, L & T # 1510-75, whereupon one branch of the family objected and complained to the Court that the matai title of their family be removed on the ground that it has been six years of residing away from the family, and, for not performing a tautua to the family through performing his matai responsibilities, to the village, district and the country; and particularly the family is not living peacefully on the grounds that the lands and family properties have been prejudicially designated by him (the matai) to some people even though they are properties or communal family lands of the family. It reveals from the decision of the Court that the motion was denied and dismissed due to insufficient evidence to warrant the removal of the title from Saga T. Vaivao. Again, note that a complaint filed by the family on the ground that he has resided away from the family for one year; the evidence is that his absence was not only for one year but for six (6)

whole years residing in America (U.S.A) charging him of violating the above mentioned law.

While Afioga Tiumalu Taimane, 70 years, who is presently holding the title Tiumalu was on the witness stand, she testified that she denies that point that Telesia possesses Tongan blood, because she is of aged in that she is seventy (70) years of age yet she had never heard anything that there are Tongan relatives of the Tiumalu family, neither she has Tongan relatives. She also did not hear any talk about a Tiumalu family trip that would have gone to Tonga either to visit or to trace Tiumalu family genealogical line with the Tongans, not at all. She also neither heard nor learned of any story to that fact that Tongan relatives of the Tiumalu family had come to introduce them to us and declared that they (Tongan relatives) have connection (gafa) to the Tiumalu family in accordance with the conditions of the customs of Samoa, never.

Likewise, Tōfā Mageo entertained a motion for denial, and, in objection to the motion which was introduced by Afioga Salanoa, regarding the blood of Telesia. Mageo, counsel for Telesia, stated in his motion that "on page 218 of the 'Black's Law Dictionary' you will find that there are three (3) types of blood: Half Blood; Mixed Blood; and Whole Blood. The wording ½ blood denotes the degree of relationship between those who have the same father or the same mother, but both parents in common. Whole Blood is interpreted a person descent from the same father and mother. Mixed blood includes persons who descended from ancestors of different races or nationalities; but particularly, in the United States, the term denotes a person one of whose parents (or more remote ancestors) was a negro. You will find it in the *U.S. v. First National Bank of Detroit, Minnesota*, 234 U.S. 245, 34 S.Ct. 846, 58 L.ed. 128."

As the translating of this motion to this Court was first objected to, that no person in this world can now test blood that are flowing in the veins of a family such as the Tiumalu family. It is proven there are about three (3) types of blood that can be tested now as we have found them from the wishes and careful researches and the studies of medical doctors thereupon they declared that there are three types of blood. The types are O, A and B. Thereupon the Court declares that Telesia Tiumalu Scanlan, born in Samoa, has resided continuously in American Samoa, she is 49 years now and is still living with Samoans—during her entire life; that there is Tiumalu blood in her veins—equals to 50%, and this was confirmed by candidate Palauni Tuiasosopo, and especially the Afioga Salanoa Aumoeualogo who is counsel for Palauni Tuiasosopo. It, therefore, the ruling of the Court ref [sic] the said issue, as one part of the case, that Telesia Tiumalu Scanlan is eligible now to succeed and hold a matai title in the Government of American Samoa.

And the Court will now turn to find facts in reference to evidences and testimonies of those who testified for each party respectively before the Court.

This matter was first referred to the Office of Samoan Affairs pursuant to law, in that investigation be conducted to discover whether settlement could be reached that Tiumalu family would live peacefully. The family, however, was unable to reach settlement, accordingly, it was referred to the law and the Court. Moreover, it was filed with the law because of Telesia Tiumalu Scanlan offering the title Tiumalu to register in her name, and this application was filed on March 11, 1974, Fagatogo, County of Ma'uputasi. Whereupon Palauni Tuiasosopo filed his application for registration of the title Tiumalu in his name, in the month of May 14, 1975, Fagatogo, County of Ma'uputasi.

Now, the Court will consider Telesia Tiumalu Scanlan's application, as well as Palauni Tuiasosopo's application.

Counsel for Telesia Tiumalu F. Scanlan—Tōfā Mageo Meauta Atufili.

Counsel for Palauni Tuiasosopo—Afioga Salanoa Aumoeualogo.

Section 6.0107, Code of American Samoa outline considerations which the Court shall be guided in its determination as to which candidate to the title is suitable to register the matai title, and the section reads as follows:

Section 6.0107—that determination of the Court on Land and Titles shall be guided by the Court on important considerations as outlined:

(1) The best hereditary right, as to which the male and female descendants shall be equal in families where this has been customary; otherwise, the male descendant shall prevail over the female.

(2) The wish of the majority or plurality of the clans as customary in that family.

(3) The forcefulness, character and personality and the knowledge of Samoan customs.

(4) The value of the holder of the matai title to the family, village, county and country.

The first consideration of the Court was on the issue on hereditary right to the title Tiumalu. The Court deliberated on the evidence and grouped them together in the light of the witnesses' testimonies and counsels' arguments. These caused the Court to believe that Telesia possesses one-half (1/2) or fifty percent (50%) Tiumalu blood in Telesia's veins—and Afioga Salanoa who counseled for Palauni Tuiasosopo concurred.

Regarding Palauni's blood, the Court had difficulty to firmly determine Palauni's blood due to a number of those who testified against the Tanielu clan; the Court believes that a person who desires confirmation of his blood for the purpose of succeeding or becoming a matai of a certain family, based on his connection to a certain title, through

his descent and a clan of his descendant. In other words, if a person not descended, out of a clan that is related to the title Tiumalu, then it meant that there has also not in his veins (body), blood related to the title as tamā-matua Petelo, who is 60 years, testified to. He said that "Tanielu, to whom Motumotu, the father of Tuasosopo Mariota descended to whose offspring is Palauni, now a candidate to the title Tiumalu, was not a Samoan, but a Hawaiian. The complete story as testified to by the said tamā-matua will not be recorded that his denial of any Tanielu clan in the Tiumalu family.

In the entire written statements by Samu Fa'amao Tiumalu, he said in his testimony that if he would testify on behalf of either of them, Telesia or Palauni, he would state the truth from God. The testimony in its entity causes the Court to positively know and believe that it is a remonstrant testimony emphasizing the fact that there is no Tanielu clan in the ancestry lines of Tiumalu family. Those who were introduced and made statements in the record of Samu Fa'amao Tiumalu's testimony are the following:

(a) Ta'amu who descended from Luteru clan told Samu Fa'amao Tiumalu that clans of Tiumalu family are Luteru, Malaki, Male (Faigatā) and Eseta.

(b) Likewise is the testimony of Liufau whom Tiumalu Taimane, the present holder of the Tiumalu title, descended from. Liufau's statement to Samu Fa'amao, too, that, remember your ancestors to wit: Luteru, Malaki, Male (Faigatā), and Eseta.

(c) Also the testimony of the tama'ita'i matua Mausa and Tiumalu La'ila'i given to Samu Fa'amao Tiumalu in the same language.

(d) In the statement Samu Fa'amao Tiumalu, he testified that his grandmother (tinā-matua) Tā'itai, told him the following: "Tanielu was the father of Motumotu; Motumotu was the father of Tuiasosopo Mariota, Toso,

162

Fa'ata'ape and Saufaigā—they are our relatives (aiga) in the Samoan way (fa'a-Samoa) in relation to the Tiumalu family, yet not blood relatives (e le o aiga tau-toto). This Tā'itai, Samu Fa'amao Tiumalu's grandmother who said that she often talked with Motumotu and she was a good server (tautua), however, no Tiumalu blood in her veins (tino).

(e) Fa'aafe's father, Luteru, adopted Ta'ateo. Her statement to Samu Fa'amao Tiumalu was that Ta'ateo was an adopted one, she too, has no Tiumalu blood. Fa'aafe also informed him, if he liked to know for sure then ask Pala Tavu'i.

(f) Pala Tavu'i verified statements of Tā'itai and Fa'aafe that there is no Tiumalu blood in Tanielu and his seeds, so as Ta'ateo and her children.

(g) All of these recorded statements were around 1928, 1930, 1932, 1936, and 1938.

The opinion of the Court formed from the testimony of Petelo and the entire statements of Samu Fa'amao Tiumalu seemed like a picture taken by a camera, in the mind of the Court, in that Tanielu clan is an applied or an added one into the genealogical lineage of Tiumalu family, but according to the true tradition of Palauni family as was related by one direct testimony in that the genealogical lineage re their connection to Tiumalu family is as follows: Tiumalu Mataiasi was the ancestor of Tanielu, Luteru, Malaki, Faigatā and two girls, Tupu and Litea.

This Tanielu married Tia'ina, daughter of Savea of Matu'u, whom Motumotu is descended. Said Motumotu married Mereane, daughter of Kuki (minister), the offspring was Tuiasosopo Mariota, Toso, Fa'ata'ape and Saufaigā; and this same Tuiasosopo whose offsprings are Mariota, Mere, and Palauni now candidate to the title Tiumalu.

163

And the classification of the blood of Tanielu clan is as follows: Tanielu to Tia'ina, the offspring was Motumotu Tuiasosopo Samia, is equal to $12\frac{1}{2}\%$ or $\frac{1}{8}$. Motumotu to Mereane is equal to $\frac{6}{4}\%$ or $\frac{1}{6}$. Mariota Tuiasosopo to Venise is equal to $3\frac{1}{8}\%$ or $\frac{1}{32}$. In other words, Palauni's blood to the Tiumalu is equal to $\frac{1}{32}$. And the other testimony which is in the written record is the testimony of Samu Fa'amao Tiumalu to the fact that Toso, the brother of Tuiasosopo, said to Samu Fa'amao Tiumalu that his brother was Mariota Tuiasosopo. That the Tanielu clan takes charge of the selection of a person to hold the title Tiumalu, even though a number of evidences that caused the Court to believe the objection of a large group of Tiumalu family in that there has been no Tanielu clan in the genealogical lineage of Tiumalu family. But the Court has given grave considerations in order to qualify Palauni Tuiasosopo's blood pursuant to the pedigree of Tanielu clan relating to their connection to the Tiumalu family. Moreover, the Tōfā Mageo Meauta, counsel for Telesia, has mutually stipulated that Palauni's blood to Tiumalu title is equaled to $\frac{1}{32}$.

It therefore decided that the Tiumalu blood flowing in Telesia Tiumalu Fouuluvale Scanlan's veins is 50%; but Tiumalu blood running in Palauni Tuiasosopo Samia's veins is $\frac{1}{32}$. In other words, Telesia prevails over Palauni on hereditary issue.

The second issue of the matter "The wish of the majority or plurality of the clans of the family as customary to that family."

In Palauni's questionnaire it discloses that there are seven (7) clans in the family, namely, Tanielu, Malaki, Luteru and Faigatā; and this is Palauni's concrete testimony while on the witness-stand that there are only four (4) clans of Tiumalu family. But Fagaso'aia Lio testified on the witness-stand that the family has five (5)

164

clans. Moreover, this Fagaso'aoa Lio, representative from Luteru clan, has testified on the witness-stand that he supports Palauni.

It was very clear to the judge that Tōfā Mageo Meauta, counsel for Telesia did ask Fagaso'aia twice while on the witness-stand "About how many clans of the Tiumalu family?" Fagaso'aia's answer is "Only five (5) clans," and this has indicated to the Court that Palauni is somewhat contradicting Fagaso'aia Lio who testifies representing Luteru side which is supporting Palauni. But the Court knows now these two contradicted each other and this seems to the Court they do not agree on the issue on clans, according to the belief as maintained by supporters of Palauni. Anyway, this is an acknowledgment to the Court that Fagaso'aia Lio strongly opposing Palauni, as the court understood it, and from what was testified in that Fagaso'aia Lio, who is acting for Luteru clan, is support-ing Palauni. The careful weighing of evidence the Court has detected that the majority of Luteru clan is not with Palauni since they admitted that there are five (5) clans of Tiumalu family; however, Palauni with his side re Tanielu maintained the belief that there are four (4) clans of Tiumalu family.

Each questionnaire contains twenty-four persons who signed their names on each questionnaire respectively. That means they are on a par as to the total number of persons who affixed their signatures respectively on both of them (Telesia and Palauni); but there is something rude therein when it comes to think of it. In both questionnaires are names of those who signed twice. This denotes that these (persons) have not yet set their minds to one of the above two, consequently, they signed their names on both questionnaires of Telesia and that of Palauni.

The Court, thoroughly studying both questionnaires, is positively sure that there are only four (4) persons of the

Tanielu clan who signed in support of Palauni, even though Palauni, candidate to the title Tiumalu descended from this very clan; therefore, if we deduct this one person who is a descendant of Tanielu clan who signed his name in favor of Palauni, and then signed in support of Telesia, even though the Tanielu clan is backing Palauni, this would mean that Tanielu clan could have only three (3) members left, and this is the clan wherein Palauni descends; furthermore, the Court after reviewing Telesia's questionnaire thoroughly, mainly those of her own Malaki clan who favor her, there are 19 signatures; and if the two signatures of Malaki clan who have signed in both her questionnaire and that of Palauni be crossed off it leaves seventeen (17). If then the Court considered that only three (3) members of Tanielu clan supporting Palauni against seventeen (17) of Malaki clan supporting Telesia, this shows how wide apart Telesia prevails Palauni regarding their respectful clan thusly Malaki for Telesia and Tanielu for Palauni.

On other clans that Tōfā Mageo referred to such as Malaki clan being the largest in the Tiumalu family is backing Telesia. Faigata clan—part of said clan is upholding Telesia, so as Tanielu clan. The evidence from the argument of Tōfā Mageo, he outlined the division of Faigata clan and their names are: Male, Fa'amao, Fālō and Viavia; Tōfā Mageo's testimony was that Palauni is supported by Male's heirs, but Fa'amao is upholding Telesia, ref the children of Fālō and Viavia—the Tōfā Mageo further said in his testimony that candidacy of Telesia is supported by clan of Faigata; in the clan of Eseta according to this matter, Mageo testified that the herein clan is splitting in two since Telesia is being supported by the elderly lady (tama'ita'i-matua) Fa'alogoa'e who is still living with her family. Her brother's children, however, are supporting Palauni.

In Palauni's side, Mariota Tuiasosopo testified that Palauni is supported by Tanielu clan. Afioga Salanoa asked Folasa while on the witness-stand as to "who does Faigata clan support"—Folasa's answer was that Palauni is supported by Faigata clan. Fagaso'aia Lio was also asked as to who does Luteru clan support, and Lio replied—"Palauni". This same Fagaso'aia testified on the witness-stand that Tiumalu family has five (5) clans. And the document whereupon Samu Fa'amao's testimony is recorded and has been admitted as evidence of the Court contains only four (4) clans of the Tiumalu family, and their names as follows: Malaki, Luteru, Faigatā, and Eseta, but no Tanielu. Furthermore, Samu Fa'amao Tiumalu said in his testimony that Ta'ateo is an adopted one of Luteru. This Ta'ateo where Lio Fagaso'aia descends from and who testified of five (5) clans, and he (Fagaso'aia Lio) is supporting Palauni; and referring to Palauni's questionnaire four (4) clans of Tiumalu family are written therein, and their names are as follows: Tanielu, Luteru, Male (Faigatā) and Malaki, but Eseta is not included. Telesia also, did not mention anything that there are seven (7) clans customary to the family; also Litea and Tupou are not mentioned in Telesia's list of clans; thus the Court has gained its understanding and its decision that they are in a clash on the issue on clans, on the ground that no one of the above two candidates to this title have ever told us the total number of blood members of a particular clan which support which of the candidates. And, therefore, this Court cannot render a decision based upon assumptions. We failed in our consideration as to which of these two candidates is supported by the majority of the clans of the family as customary to the family pursuant to the testimony given. Accordingly, we will disregard this issue at our deliberation re our decision re which one of them bears the title Tiumalu.

The third (3) issue of the foregoing litigation is "forcefuleness", character and personality of the one holding the matai title, and especially the knowledge of the Samoan customs. The Court shall first offer a thought on the issue of qualification on Samoan custom. Few simple questions were asked of both of them in relations to the Fagatogo village; though some of the questions and answers were uncertain, any way they moved along together on this part of the third issue of the trial, and, the Court believes that the matai title "Tiumalu" is the "ali'i" title which does not bother to learn the art of speaking as in the case of *tulafale titles*. The Court believes if one of them (two candidates) succeeds the title Tiumalu, much knowledge about the sure meaning of the custom of the true Samoans would gradually be obtained.

On the issue on forcefulness and personality. It appears in the mind of the Court that Palauni had gained higher educations, and especially his government service. Palauni had attended some major center of education in America at the University of Oregon, and the University of Southern California, he also attended education center in Hawaii, at the East West Center, and Punahou School in Hawaii; he too had completed high school in American Samoa especially the many other fields of education and employment he was engaged in as listed in his questionnaires. Telesia attended and graduated from the Sisters School in American Samoa. She also went off island for schooling in Hawaii, at Lauahola, taking a special course on handicrafts; Telesia also took up courses on general knowledge and the English as well as vocational courses, and particularly a course on dancing and entertainer, in Honolulu. The Court has accepted that Palauni's education and services are very outstanding, especially his present position as an Aide to the Governor, thereupon he draws very high wage of $23,270.00 per annum not counting his

wife's income; and if added together it could amount to $29,000.00 income per year. Telesia operates joint businesses with her husband and she stated that she gets $1,000.00 per month or $12,000.00 per year excluding her husband's yearly earnings of about seven to eight ($7,000.00 to $8,000.00) thousand dollars. She did not mention any income receiving from her children who are employed with the government or her son who is in the U.S. Army including others who attend school and work. The Court believes that Palauni's education and positions of employments are higher, particularly their wages, Palauni is higher than Telesia. Accordingly, Palauni in percentage wise is higher than Telesia on this part of Chapter 3, to wit: forcefulness, character, and knowledge of Samoan customs.

██ On the item of personality, their personality and calmness seemed to be equal; but the Court seems to take the view that Telesia bears a pleasant personality while Palauni a fallen countenance; because Palauni is quiet and it apparent he does not like people, however, he is considered a person of good conduct; Telesia, however, prevails on personality and in living happily. This is another part of the issue on qualification to persuade members of a Samoan family; many of the Samoan people are accustomed to speak to other people in general saying, "how good is that man and that woman who bear happy countenances, but it sounds bad in the fa'a-Samoa when it said that "the man and the woman are good except they don't look happy with the people." Indeed we know the culture and the true Samoan customs that if a person is found to be living happily, a couple or a family who lives after this manner such as living happily is liken to living true Samoan custom; if, however, a person lives a seemingly unhappy life, he would likewise be undesirable by anyone else, as was mentioned by Tōfā Mageo in his

169

view of Palauni while on the witness stand, he said that Palauni is in the class of frowning life. It is the opinion and belief of this Court that this is part of the issue of forcefulness—for a matai with delightful countenance, and is well-liked before his family will also be an attraction of the family toward him/her in the spirit of happiness, accordingly, the Court concluded that percentage-wise Telesia prevails Palauni on this section of the third (3rd) consideration, to wit: forcefulness, character (amio), knowledge of Samoan customs pursuant to Exhibit 1 of Tōfā Mageo for his client, as follows:

(a) Telesia has the Power of Attorney to represent some matters, as stated, that in 1966, she served as personal representative of Tiumalu within Fagatogo Village directly with Faletua and Tausi in connection with the cleaning and beautifying of Fagatogo. The said drive caused Fagatogo to win the first prize on the beautification contest.

(b) She, for six (6) years, served as a faletua of the Tiumalu family, and simultaneously she participated with the village council or associated with matai in accordance with Samoan customs.

(c) In 1973, selected by ali'i and faipule of Fagatogo village to be Pulenu'u and she served in this position for two years.

(d) That Telesia requested Public Works Department to construct a bridge, thus the said request was brought to pass at the completion of the said project in the village of Fagatogo.

(e) That Telesia appealed to Afioga Kovana Itumalo, Eastern District that Fagatogo village performed the dance and the song for the Flag Day celebration of the Government of American Samoa. Telesia made the said request by virtue of her being the Pulenu'u—but, this section of the third (3rd) consideration of the Court was objected

to by Afioga Salanoa upon the ground, that there was not a single evidence nor a testimony presented to the Court that touched this point as it submitted to Court now—the Court overruled the objection, and therefore Mageo continued on.

Moreover, this entire part, like all of the above facts which were presented has pointed out that Telesia is truly qualified to succeed the matai title Tiumalu upon her leadership performance in that every one of them completed favorably; however, the Court in its own wisdom, the judges was able to pose a hypothetical sample question as follows: Had Tiumalu felt, concurred by one group of the family, to appoint Palauni to represent Tiumalu Taimane on the grounds that she is old in age and feeble, such as in the case of Telesia, will Palauni have performed the good works herein as in the manner Telesia did? The Court's hypothetical answer is that Palauni could also do all the herein works as did Telesia. Though the Court is in doubt whether Palauni does the said work or not; any way, Afioga Tiumalu Taimane had not expressed intentions that Palauni continues her administration as she (Tiumalu Taimane) declared that Telesia takes over her administration due to her age; but the Court indeed believe that Telesia's good works could be superseded by Palauni's good works if it be done willingly. The Court, therefore, contended that they are in parity on this point, that is consideration three (3) of the Court—"Forcefulness, character, personality, knowledge of Samoan customs"— thus the Court has reached this decision after dividing their points or percentage as follows:

a. Regarding the issue on knowledge of the Samoan customs, they are in parity;

b. Regarding education and employment, as well as income, Palauni prevails Telesia;

171

c. On the issue of personality and character, Telesia superseded Palauni;

d. On forcefulness and character, they are at par. The Court after considering the following sub-sections of the third (3rd) consideration to wit: forcefulness, character, personality, and the knowledge of the Samoan customs find they are equal.

The fourth (4th) issue says: The value of the holder of the matai title to the family, the village, and the country. This issue is part of the matter (fa'amasinoga) and it's a difficult issue the Court had to consider; other people, and legal counsels are of the opinion that when a person prevails over the third (3rd) consideration, it would be interpreted that that person automatically prevail on the fourth (4th) consideration. The Court's answer to said conclusion is "no." Legal counsels and the public are fully aware of the language of the third (3rd) consideration which says: "Forcefulness, character, personality, and knowledge of Samoan customs." But the fourth (4th) consideration, "The value of the holder of the matai title to the family, the village, district and the country." This makes difference as pointed out by the Court. The Court will now consider with great care which of these two should bear or succeed to hold the title Tiumalu during this period.

And, will begin after this manner: All activities and works which have completed by them, activities and things which are still going on, the court is taking judicial notice; moreover, a picture apparently depicting an invisible move that both candidates to the Tiumalu title desiring to perform, furthermore, the income received by each of them as in the case of Palauni who receives from his present employment as the Official Aide to the Governor of American Samoa, thereupon he gets $23,270.00; if his wife's income be added then the grand total would be

$29,000.00. No further comments about services and Palauni's education, as it has been revealed earlier at a certain part of the third (3rd) consideration, particularly his outstanding achievements in the field of education and employments whereby he surpassed Telesia's education and employment. Telesia gave a personal testimony stating that her monthly wages was $1,000.00 or $12,000.00 per annum; she did not comment re her husband's wage, but taking judicial notice, her husband earns about $7,000.00 to $8,000.00 a year; again, no further comments on Telesia's education and services which were already mentioned above in connection with consideration three (3) re the matter at bar; in other words, referring to each candidate's income, Palauni's wage is above Telesia's; furthermore, money is a valuable thing as known throughout the world. It is not only valuable to the individual, but to the family as well; then this much money that Palauni gets through his knowledge and wisdom gained from the many field of education he attended to, Palauni therefore, must have built a guest-house or business, such as a restaurant, garage, or a plantation of his own or even a store—this would be good means whereby some of the public might gain employment and receive money for their own use.

The Court is of the opinion that that would only be something that would be a physical result of the wisdom and knowledge which he gained from higher education, especially of much money which he gets—and the most treasured thing to a man would be his beautiful strong fale for him, his wife and children to live in. But lo and behold, when Tōfā Mageo, counsel for Telesia, asked Palauni while on the witness stand—if he's got a house, Palauni's answer was "no." Mageo asked Palauni as to whose house he is living now. Palauni's answer is that "his sister's house." Mageo asked if he is serving a Samoan matai, and Palauni's answer was "no." Mageo asked if he

is maintaining his taule'ale'a monotaga in Fagatogo, and Palauni answered "no." Mageo asked Palauni as to the election district he is a voter at the election, and Palauni replied, "that he is a voter at Vatia." The herein facts before the Court are Palauni's personal testimony in Court. Something about Palauni's rendering services (tautua) to the Tiumalu family was mentioned in one part of the foregoing record of this matter; such services, however, rendered only at times when an incident occurred in the Tiumalu family, or only at times when it can, but not every day; but Palauni gave a correct answer in his reply to Mageo's question when he (Palauni) said "he is not rendering services to a matai." All these points that Palauni has personally testified upon, and the Court finds, are not in line with his preparation to this period of time. Again, note that this is the only issue in consideration three (3) in that Palauni prevails Telesia—on the number of higher educations and positions he holds due to his outstanding knowledge whereby his qualification is based on. He is working in the Office as Aide to the Governor of American Samoa, whereupon he receives a very high salary; but there is no physical fruits as of what had been put up from this income; it is caused by lack of sharing such on useful things for him. Again, listen to his own testimony before the Court in that he has no house to live in with his wife and his children, instead, he with his wife and the children are living in his sister's house. In an opinion and the findings of the Court, the said house is the ownership of Palauni's sister and her husband, and this house is located on the individual property of his brother-in-law but not on Palauni or Tiumalu family land. This is not the case. This is one of most embarrassing and unrecognized observations of the true Samoan customs that a sister and brother occupying the same house, or a brother and his wife lodging in the same house with his sister and

her husband under the same roof; that Palauni has no monotaga as a young man in the village of Fagatogo. That means he has not the appearance of being an example for preparation to succeeding a matai title; there being no continual services nor a direct services to a matai, then there is no qualification as of true fa'a-Samoa according to customs which are customary to the Samoans. It pointed out in Palauni's questionnaire that he has added responsibilities besides his present position as was testified that he is Permanent Assistant Delegate of American Samoa to the South Pacific Conference, Chairman, Board of Trustee, Museum of American Samoa, Director, American Samoa Program for the Elderly People, and various other programs within the works that Palauni performs. But remember when more works with special committees a person is engaged in besides his or her actual position in the government, it meant that his mind will pay much attention and so at the same time have insufficient chance to bring up other valuable experience such as a time to be with his family, as a matai; for the Court believes that more chance a matai spends with his Samoan family, the better the relationship and happiness will the matai and his family members experience with the true Samoan way of living; it will draw the family to live Christian-like life. The Court is therefore reminded of the following sayings: It is useless to own much material rich and prosperity without knowledge of how to spend them properly.

 Regarding Telesia, if the Court were to contemplate the record of her works already done—in reference to consideration three (3) as follows: Forcefulness, character, personality, and knowledge of Samoan customs—we will not repeat this, since the Court believes that Telesia is well familiar with proving and fulfilling the matai-family relationship in view of her experimental service, she needs no other training to an attempt to succeed to hold a matai

title, for it's done already, and has for the last six (6) years on this experiment service—this is improvement, and would make it easier for her to succeed to be a matai of a Samoan family. Telesia's yearly income is somewhat smaller and it's about $12,000.00, not counting her husband's income from the government amounting to $7,000.00 or $8,000.00 per year as is fully known by Afioga Salanoa being the President of the Legislature and Tōfā Mageo Meauta, being the secretary to the Governor of the Eastern District, thus the Court pointed out this issue regarding the wages of Telesia and of Palauni. Palauni receives his wages from his government position as he mentioned—in other words then, if he be dismissed from his service immediately there would be no money received to support the family and his matai as well. Telesia's income comes out of the work of her own hands and her ideas together with the sound support of her husband—it meant, as the Court felt, Telesia apparently fixed her own wage since the money coming in, is from her own businesses, as she has a fine motel, a two-story building, decorated beautifully wherein Telesia and her workers usually entertain; the Bar Association, too, usually hold their meetings therein and Afioga Salanoa and Tōfā Mageo is fully aware of that since they are not only members of certain committees but are members of the said Bar Association. She has a liquor or beer tavern which is publicly known as "Bamboo Room," moreover, of her beautiful home at Malaeimi where she now lives. Some of the public are employed in the Ice Cream branch, and Telesia pays them out of the income from her businesses; even though it is understood to be a joint business with her husband, the Court, however, believes it's Telesia's efforts that generate all these things, that all of Telesia's works are her own. It's not a work controlled by the Government, with only bills and business licenses to pay. There would be no reason for dismissing Telesia from work because she is the

boss of the entire operations. The Court is of the opinion that Telesia's work will continue on as long as she likes. The Court, in its opinion, has disclosed the said foregoing valuable things as a result of Telesia's works together with her husband's help in consideration of Telesia's monthly income of only one thousand ($1,000.00) dollars, in comparison with the yearly income of twelve thousand dollars ($12,000.00). Summing up the four sections of the Code, the Court concluded that Telesia prevails on issue four (4) on this part of the trial. If four issues be totaled up pursuant to the language of the Code—in reference to the two claimants to the title Tiumalu, as considered by the Court, it reached the following findings: regarding Telesia's hereditary rights, it is proven before the Court she has fifty (50%) percent Tiumalu blood. Palauni is proven before the Court to have had one-thirty second ($^1/_{32}$) Tiumalu blood. Telesia prevails over Palauni in that she has more blood. On the consideration on the wish of the majority of the clans upon each of the claimants, the Court upon consideration, disregarded it. The consideration on forcefulness, character, personality, and being qualified on Samoan customs, they are in parity. The fourth consideration reads: The value of the holder of the title to the family, village (community) and the country. Telesia prevails over Palauni, and in adding all testimonies brings about the following: That Telesia prevails on hereditary right. The two are at par on the consideration of supporting by the majority of the clans as is not considered. They are also equal on consideration three (3), but Telesia prevails on four (4).

WHEREFORE, IT IS ORDERED, DECREED AND ADJUDGED, that Telesia F. Tiumalu Scanlan has the decision, and is hereby awarded the title "Tiumalu" of the village of Fagatogo. The Territorial Registrar is hereby instructed to register the title Tiumalu upon Telesia. Court

costs for five days is one hundred twenty-five ($125.00) dollars and shall be paid by Palauni Tuiasosopo within thirty (30) days from the date the foregoing decision was signed and approved.